# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| NANCY HINES PENDERGRASS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-145 |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | Judge Steger |
| Commissioner of Social Security | ) | |
| Administration, [1] | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM OPINION

### I.      Introduction

Plaintiff seeks judicial review pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), of the denial by the Commissioner of the Social Security Administration ("SSA") of her application for  disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-434.  The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Sixth Circuit [Doc. 12].  For the reasons stated herein, Plaintiff's Motion for Judgment on the Pleadings [Doc. 14] shall be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 20] shall be **GRANTED**, and the decision of the Commissioner shall be **AFFIRMED**.  Judgment in favor of the DEFENDANT shall be entered.

---

[1] Carolyn W. Colvin was the Acting Commissioner of Social Security when the instant suit was initiated.  Nancy A. Berryhill has since assumed that role.  Accordingly, the names have been changed.  Fed. R. Civ. P. 25(d).

**II.     Background**

    **A.  Procedural History**

Plaintiff applied for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-434.  [Tr. 165-68].  Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the SSA ("Commissioner").  Plaintiff's claim was denied and she requested a hearing before an administrative law judge ("ALJ").  [Tr. 87-89].  On May 1, 2015, following a hearing, the ALJ found that Plaintiff was not disabled. [Tr. 8-28].  On March 18, 2016, SSA's Appeals Council denied Plaintiff's request for review. [Tr. 1-7].  Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.  Plaintiff filed a complaint seeking review in this Court on May 20, 2016, which the Commissioner answered. Subsequently, Plaintiff filed a motion for judgment on the pleadings, and the Commissioner filed a motion for summary judgment.  Both motions are ripe for review.

    **B.  The ALJ's Findings**

After considering the entire record, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Act through September 30, 2015.

2.  The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date (20 C.F.R. § 404.1571 *et seq.).*

3.  The claimant has the following severe impairments: degenerative disc disease and obesity (20 C.F.R. § 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except the claimant is limited to posturals occasionally. The claimant should avoid ladders, ropes, scaffolds, heights, and dangerous machinery. The claimant requires a 30 minute stand/stretch option. Also, the claimant could understand, remember and carry out simple and detailed instructions. She could make work-related judgments typically required for semi-skilled work. She could respond appropriately to supervision, coworkers and work situations. The claimant could have contact with the general public on a frequent basis and with supervisors and coworkers on a frequent basis. Further, the claimant could deal with changes in a routine work setting on a frequent basis.

6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. The claimant was born on April 7, 1973, and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. § 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Act, from January 1, 2011, through the date of this decision. (20 C.F.R. § 404.1520(g)).

3

[Tr. 13-23].

## C. Relevant Facts

### 1. Plaintiff's Age, Education, and Past Work Experience

At the time of the hearing before the ALJ on March 24, 2015, Plaintiff was 41 years old. She was 37 years old at the time of her alleged onset of disability on January 1, 2011.[2] She completed at least two years of college and has past relevant work as an assistant manager for a financial institution, a bank teller, an appliance salesperson, and in retail sales. [Tr. 32-33, 48-49, 52, 186, 302].

### 2. Plaintiff's Testimony and Medical History

The parties and the ALJ have summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

## III. Analysis

### A. Standard of Review

To establish disability under the Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential

---

[2] Plaintiff initially alleged an onset date of February 15, 2010. At Plaintiff's request, the onset date was amended during the hearing before the ALJ.

evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity she is not disabled; (2) if the claimant does not have a severe impairment she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment she is disabled; (4) if the claimant is capable of returning to work she has done in the past she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which she can perform considering her age, education and work experience. *Richardson v. Sec'y, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389 (1971); *Landsaw v. Sec'y, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of

choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

### B. Discussion

Plaintiff presents three issues for review:

(1)    Whether the ALJ erred by failing to properly consider Plaintiff's impairments—specifically, (a) lumbago status post L3-S1 instrumented fusion, (b) adjustment disorder with mixed anxiety and depressed mood, and (c) obesity;

(2)    Whether the ALJ erred by failing to consider a closed period of disability; and

(3)    Whether the ALJ erred by failing to provide a function-by-function assessment in the RFC assessment pursuant to SSR 96-8p.

They will be discussed in the order presented immediately above.

## 1. (a) Whether the ALJ failed to properly consider Plaintiff's lumbago status post L3-S1 instrumented fusion

Plaintiff first argues that, although the ALJ found her degenerative disc disease ("DDD") and obesity to be "severe" impairments, she was also diagnosed with "lumbago status post L3-S1 instrumented fusion" ("lumbago"[3]), which the ALJ failed to consider. She asserts that, although her lumbago diagnosis also involves her back, it is wholly separate from her DDD because it involves continued pain despite surgery. In essence, she seems to be arguing that lower back pain and limitations occurring after back surgery constitute a different impairment than lower back pain and limitations arising from DDD before surgery. She asserts that her lumbago was documented in the record by evidence and testimony; that it is an additional impairment that causes additional limitations that could impact her ability to perform at the determined residual functional capacity ("RFC"); and that, accordingly, the ALJ erred by failing to consider it.

In support of her argument she cites *Reynolds v. Comm'r of Soc. Sec.*, 2014 WL 241527 (E.D. Tenn. 2014), in which this Court found that the ALJ had failed to discuss the effects of the claimant's headaches on his ability to perform work activity. In *Reynolds*, the Court determined that there was evidence in the record to support that the claimant suffered potentially debilitating headaches. Further, although the ALJ found the claimant's status post-traumatic brain injury was a severe impairment, the ALJ did not address the claimant's headaches. Therefore, the Court could not determine whether the ALJ had considered the headaches or their possible effect on the claimant's ability to work. *Id.* at 6-7.

---

[3] To be clear, the term "lumbago" simply means mild to severe low back pain.

In determining disability, the ALJ must determine, in relevant part, whether a claimant has a medically determinable impairment, or a combination of impairments, that qualify as severe. 20 C.F.R. § 404.1520(c). Regulations provide that an impairment is severe if it has "more than a minimal effect" on the claimant's ability to do basic work activities. SSR 96-3p. By contrast, it is non-severe if it does not significantly limit a claimant's ability to do basic work activities. *Id*. Basic work activities are the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 1522(b). Examples include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *Id*. The Sixth Circuit has held that the determination of whether an impairment is "severe" is a "de minimis hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

As noted in the ALJ's decision, Plaintiff testified that she was terminated from her job as a bank teller in 2010 when she became pregnant, and that she had back pain immediately following delivery of her child. [Tr. 16, 32-33]. She underwent multi-level fusion surgery in 2011, and alleged that she suffered nerve damage from the surgery and continued to feel pain in her low back radiating into her legs. [Tr. 16, 36-38]. In his decision, the ALJ found that Plaintiff had medically determinable impairments of degenerative disc disease ("DDD") and obesity, and that they were severe. [Tr. 13]. The ALJ also found that Plaintiff had medically determinable impairments of anxiety and depression, but they were non-severe. [*Id.*]

The ALJ determined that, in light of these impairments, Plaintiff had the RFC to perform sedentary work, pursuant to 20 C.F.R. §404.1567(a), except that she was limited to posturals

occasionally. [Tr. 16]. The ALJ determined, *inter alia*, that Plaintiff should avoid ladders, ropes, scaffolds, heights, and dangerous machinery; and she requires a 30-minute stand/stretch option. [*Id*.]. The ALJ stated that, in determining Plaintiff's RFC in light of her impairments, he had considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" based on the relevant rules and regulations. [*Id*.].

Plaintiff correctly states that an individual could have lower back pain and limitations as a result of DDD in the absence of surgery. And, that individual can have continued lower back pain and limitations following back surgery. It does not follow, however, that the pre-surgery back pain arising from DDD and the post-surgery back pain constitute separate and distinct impairments, as Plaintiff argues. Assessments and diagnoses of DDD and lumbago/lower back pain both appear frequently, and more or less interchangeably, throughout Plaintiff's medical records. There is nothing to suggest that Plaintiff's post-surgery back pain is a different impairment than the pre-surgery back pain related to her on-going problem with DDD.

Moreover, it is evident from the ALJ's exhaustive documentation of Plaintiff's medical history that he considered the impact of her lower back pain as part of her DDD impairment when he determined Plaintiff's RFC. For example, the ALJ noted that Plaintiff had a history of DDD and had undergone epidural steroid injections; that she was assessed with chronic low back pain on January 24, 2011, by Frank Chandler, M.D., an internist; and that she was prescribed medication. [Tr. 17, 260-82, 382-92]. The ALJ noted records from the Center for Sports Medicine and Orthopedics dated January 27, 2011, indicating that Plaintiff alleged lumbar back

pain and had DDD.  [Tr. 17, 382-92].

The ALJ noted an evaluation by Cleveland Spine Specialists on May 29, 2012, that reported Plaintiff had normal gait, stride, and cadence; that she reported no pain, numbness, or tingling and 100 percent improvement in her symptoms; and that the fusion from her surgery in May 2011 appeared solid in x-rays.  [Tr. 17-18, 252-54].  The ALJ noted that Plaintiff presented with low back pain during routine treatment from Bradley Pain Management and Rehab on July 24, 2012, and stated that she had problems standing too long or staying in one position, and that her primary care physician was no longer able to write pain medications for her.  [Tr. 18, 288]. She was assessed with low back pain and, in a subsequent exam, degeneration of lumbar disc was noted.  [Tr. 18, 289-91].  Plaintiff was prescribed new medication, and later she reported that she was doing well, though she reported increased pain in her hips and knees that seemed to come from her back.  [Tr. 18, 294].  Plaintiff again reported that she was doing well on December 5, 2012, but reported increased pain on the left side of her lower back on February 4, 2013.  [Tr. 18, 297, 299].  She was assessed with low back pain, degeneration of the lumbar disc, and muscle spasm, and was fitted for a TENS unit.  [Tr. 19, 301].

The ALJ also noted that, in 2013 and 2014, Plaintiff was assessed with low back pain, degeneration of lumbar disc, and muscle spasm, and noted that she seemed to be in moderate pain but, overall, had good strength in all muscle groups and reported improvement with medication, the TENS unit, and massage therapy.  [Tr. 19, 393-406].  In a physical exam on October 20, 2014, conducted at the request of the SSA, Plaintiff alleged ongoing back pain and stated she was diagnosed with DDD, and that her back pain was made worse by prolonged

10

sitting, standing, stopping, bending, or lifting.  [Tr. 20, 412-21].  The ALJ noted that Plaintiff saw Charles Cox, M.D., on January 19, 2015, for follow up on opioid dependence and reported she had been doing well.  [Tr. 21, 422-26].  Based on the evidence, the ALJ concluded that her back pain was significantly better with treatment and after surgery.  [Tr. 21].

Although Plaintiff was frequently assessed with low back pain in conjunction with her regular diagnosis of DDD, there is nothing to suggest that her pre-surgery pain and limitations were "wholly separate" from her post-surgery problems.  Rather, the evidence suggests that Plaintiff's DDD was the source of the back pain, both before and after her surgery.  Moreover, although Plaintiff relies on *Reynolds* to support her argument, *Reynolds* is distinguishable because, there, the court could not discern from the record whether the ALJ had considered the claimant's headaches in determining RFC.  *See Reynolds*, 2014 WL 241527 at 6-7.  By contrast, it is clear from the ALJ's decision in this case that the ALJ took into account Plaintiff's lower back pain.  Indeed, Plaintiff does not cite to any evidence or specific limitations the ALJ failed to consider.  Thus, even if Plaintiff's lower back pain could have been listed as a separate impairment, the ALJ did not fail to consider her lower back pain, and substantial evidence supports the ALJ's determination.

## 1.  (b) Whether the ALJ erred by failing to properly consider Plaintiff's mental impairments

Plaintiff also asserts that the ALJ failed to properly consider her "adjustment disorder with mixed anxiety and depressed mood."  She argues that this impairment was documented in the record, but that the ALJ failed to find it to be "severe," and failed to state why he did not find

it to be "severe." Plaintiff cites to the results of a psychological evaluation dated February 4, 2013, which listed adjustment disorder with mixed anxiety and depression as a diagnostic impression. [*See* tr. 305]. She again cites to *Reynolds*, arguing that this impairment is separate and distinct from those that the ALJ found to be medically terminable; that it causes additional limitations, which could affect her ability to perform at the assigned RFC; and that the ALJ failed to sufficiently consider it.

The Commissioner responds that, taken as a whole, the record did not demonstrate that Plaintiff's mental impairments significantly limited Plaintiff's ability to perform basic work activities. The Commissioner further asserts that, although Plaintiff's mental impairments were non-severe, the ALJ considered them in combination with her other impairments in determining her RFC.

Here, the record demonstrates that the ALJ sufficiently considered Plaintiff's mental impairments – specifically, her depression and anxiety – and that substantial evidence supports the ALJ's determination that they are non-severe. The ALJ stated in the decision that Plaintiff had medically determinable impairments of depression and anxiety, but that, considered singly and in combination, they did not impose more than minimal limitations on Plaintiff's ability to perform basic mental work activities. [Tr. 13]. Thus, the ALJ found them to be non-severe. [*Id*.]. The ALJ explicitly considered four broad functional areas for evaluating mental disorders and determined that Plaintiff had only mild limitation in daily living; mild limitation in social functioning; mild limitation in concentration, persistence or pace; and that she had no episodes of decompensation. [Tr. 13-14].

The ALJ noted, as to daily living, that Plaintiff could take care of her personal needs, perform cooking chores, drive a car, shop, pay bills, count change, handle a savings account, and use checks and money orders. [Tr. 13-14, 193-97]. As to social functioning, the ALJ noted that Plaintiff was able to answer questions appropriately and stay on topic during her February 4, 2013, evaluation by Benjamin Biller. [Tr. 14, 302-03]. The ALJ noted, as to concentration, persistence, or pace, that Plaintiff's cognition was found to be adequate. Specifically, she was able to name and repeat objects; to recall items after three minutes; to subtract and spell backwards; to list an example of current events in the news; to recall the day of the week, time, location, and other simple information; and to answer simple questions. [Tr. 14, 303-04]. Finally, the ALJ determined that Plaintiff had no episodes of decompensation of extended duration, noting that there was no evidence in the record of inpatient psychiatric hospitalizations. [Tr. 14].

Based on his assessment of these criteria, the ALJ found that Plaintiff's mental impairments were non-severe. [*Id.*]; *see* 20 C.F.R. § 404.1520a. The ALJ then engaged in a more detailed discussion of Plaintiff's mental impairments in order to determine the degree of her limitation for purposes of her RFC. [Tr. 14-15]. The ALJ noted that Plaintiff drove herself to the February 4, 2013, evaluation and arrived on time; her clothes were clean and appropriate; her actions were not considered bizarre or abnormal; and her attitude towards the interview was positive. [Tr. 14, 302-03]. She reported that she had never been in special education or resource classes in school; that she had no family, relational, or marital problems; and that she had a lengthy work history prior to her pregnancy. [Tr. 14, 303]. Among other evidence cited by the

13

ALJ, 100 percent of Plaintiff's speech was clearly understood during her mental-status exam and she answered questions logically and promptly and stayed on topic. [Tr. 14, 303]. She reported a depressed mood on and off for more than a year as a result of pain and not being able to do things she used to do, but no hallucinations or delusional thinking. [Tr. 14-15, 303].

As the ALJ also noted, Plaintiff reported she could make good decisions on her own, she functioned in the above-average intelligence range, and she had no previous direct suicidal behaviors or active psychotic symptoms. [Tr. 15, 304]. Plaintiff had no income, but was able to manage her own funds. She reported that she did not do her own shopping due to pain, but she engaged in self-care activities unassisted. [Tr. 15, 304]. She reported that she spends most of her time watching television, caring for her children, and trying to get comfortable. [Tr. 15, 304]. She was assessed with "adjustment disorder with mixed anxiety and depressed mood," with a Global Assessment Functioning of 70, indicating mild symptoms. [Tr. 15, 304-05].

The ALJ noted that, although Plaintiff reported having a significant level of depression and anxiety with respect to her declining physical health, her ability to understand and remember instructions, interact with peers and supervisors in a standardized work setting, adapt to changes in the work environment and be aware of hazards, and travel unaccompanied to unfamiliar places, or use public transportation appeared only minimally affected. [Tr. 15, 305]. The ALJ noted that Plaintiff's problems were primarily physical in nature and that Plaintiff had worked several skilled jobs and did not report that she had stopped working as a result of mental problems. [*Id*.].

The ALJ also considered various medical notes from 2013 and 2014 documenting

Plaintiff's anxiety, noting that it was being treated with medication and appeared to be relatively controlled. [Tr. 15, 260-82, 427-31]. In addition, the ALJ considered a psychiatric review by George Davis Ph.D. on February 12, 2013, indicating Plaintiff had no restriction in her daily activities, no difficulties maintaining social functioning, no repeated episodes of decompensation, and only mild difficulties in maintaining concentration, persistence, or pace. [Tr. 15, 308-34].

Although Plaintiff asserts that the ALJ failed to sufficiently explain his reasons for considering her depression and anxiety non-severe, she cites no evidence or testimony that she alleges was overlooked. I find that the ALJ sufficiently considered Plaintiff's mental impairments. Additionally, the ALJ's determination substantially comports with the SSA's initial disability determinations and with the medical evidence and opinion in the record. Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's depression and anxiety were non-severe.

### 1. (c) Whether the ALJ erred by failing to properly consider Plaintiff's obesity

Plaintiff also argues that the ALJ determined that Plaintiff's obesity was a severe impairment that affected her ability to perform routine movement and necessary physical activity within the work environment, but the ALJ failed to discuss it. She asserts that the ALJ failed to state any limitations in the RFC and provided no explanation for how Plaintiff's obesity affected the RFC determination.

The Commissioner responds that the ALJ explicitly stated that he considered Plaintiff's

obesity and found it a medically determinable impairment that contributed to her limitations but did not render her incapable of performing work. The Commissioner asserts that the ALJ provided an in-depth summary of the consultative medical examination by William Holland M.D. from October 20, 2014, and, after considering all of the evidence, determined Plaintiff's RFC based on her DDD and obesity.

SSR 02–1p provides that, in determining RFC, the effect of obesity on the individual's ability to perform routine movement and necessary physical activity within the work environment should be assessed, taking into consideration an individuals' maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. SSR 02-1p.

Here, the ALJ determined that Plaintiff's obesity constituted a severe impairment, pursuant to 20 C.F.R. § 404.1520(c). The ALJ stated that, in determining Plaintiff was capable of performing sedentary work, he had considered the entire record, including opinion evidence, "all symptoms, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Tr. 13, 16]. The ALJ further stated that he had evaluated Plaintiff's obesity in accordance with SSR 02-1p, and determined that, while her obesity was a medically determinable impairment that contributed to the limitations listed in his decision, it did not render Plaintiff incapable of performing work on a sustained basis. [Tr. 20].

As the Commissioner points out, the ALJ specifically noted documentation by Dr. Holland from October 20, 2014, that Plaintiff was 64 inches tall and weighed 184 pounds; that

she ambulated throughout the clinic without noticeable difficulty and was able to get on and off the exam table unassisted; and that she exhibited normal range of motion at her shoulders, elbows, wrists, and hands, and at her hips, knees, and ankles. [Tr. 20, 413-14]. The ALJ also noted that, in a Medical Source Statement, Dr. Holland indicated that Plaintiff could frequently lift and carry up to 10 pounds and occasionally lift and carry 11 to 20 pounds; continuously handle, finger, feel, push, and pull with both hands; continuously operate foot controls with both hands; frequently climb stairs and ramps, climb ladders and scaffolds, balance, kneel, stoop, crouch, and crawl; sit, stand, and walk two hours at a time without interruption; sit eight hours, stand six hours, and walk four hours total in an eight-hour workday; continually reach overhead and in all directions; frequently be exposed to unprotected heights and moving mechanical parts; operate a motor vehicle; be exposed to humidity and wetness, odors, dusts, fumes, pulmonary irritants, extreme heat or cold, and vibration; perform activities like shopping, travel without a companion for assistance; ambulate without a wheelchair, walker, canes, or crutches; walk a block at a reasonable pace on rough and uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal; care for individual hygiene; and sort, handle, and use paper/files. [Tr. 20-21, 415-19].

Plaintiff argues that the ALJ failed to address clear impairments to her routine movement and necessary physical activity as a result of her obesity, but she does not state which impairments the ALJ allegedly failed to address. The record demonstrates that the ALJ took note of Plaintiff's obesity, explicitly stated that he had considered its effect in determining her RFC, and noted in detail Dr. Holland's findings concerning Plaintiff's physical capabilities and

limitations. Thus, ALJ sufficiently complied with Social Security regulations, and substantial evidence supports the ALJ's RFC determination.

### 2. Whether the ALJ erred by failing to consider a closed period of disability

Plaintiff argues that the ALJ erred by failing to consider a closed period of disability. Although Plaintiff concedes that she amended her alleged onset date to January 1, 2011, she argues that the record and testimony provided concrete evidence that there was a clear period of time lasting more than 12 months in which she was under a disability. Specifically, she asserts, hearing testimony supported that she became pregnant and was terminated from her job in February 2010, and MRI results in the record indicated that she had problems with her lumbar spine long before that time. She asserts that, after her pregnancy, her pre-existing back pain returned, and she underwent back surgery in May 2011.

The Commissioner responds that the ALJ reasonably relied on the onset date alleged by Plaintiff and was only required to review the relevant evidence beginning from that date. The Commissioner argues that, even if the alleged onset date were not conclusive, the evidence does not support a closed period of disability because Plaintiff worked until February 2010, she left her job for reasons unrelated to her alleged disability, and there is no evidence to support that she was disabled between February 2010 and September 2010.

For purposes of authorizing payment of Title II disability insurance benefits, the Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

18

months." 42 U.S.C. § 423(d)(1)(A) (1994 ed.) (Title II). It is the Plaintiff's burden to demonstrate the existence of a disability. *Foster v. Comm'r*, 279 F.3d 348, 353 (6th Cir. 2001). Once a finding of disability is made, the ALJ must determine the date of onset. *McClanahan v. Comm'r*, 474 F.3d 830, 833 (6th Cir. 2006). Determining the onset date involves consideration of the applicant's allegation, her work history, and the medical evidence. SSR 83-20 at 1. The "starting point in determining the date of onset of disability is the individual's statement as to when disability began." *Id*. at 2. Although an applicant must state the onset date on her disability application, the applicant may change the alleged date in the hearing. *Id*.

Here, the ALJ found that Plaintiff was not under a disability from January 1, 2011, through the date of the decision, May 1, 2015. [Tr. 23]. Plaintiff argues that, despite her own allegation that her disability began on January 1, 2011, the ALJ should have considered whether Plaintiff was disabled for a closed 12-month period beginning in February 2010, when she left her job, or at some other point prior to January 1, 2011. I disagree.

As an initial matter, Plaintiff provides no support for her argument that, after determining that Plaintiff did not qualify as disabled during the time period she alleged, the ALJ was required to further consider whether she was under a disability during any period prior to the date she alleged. Although our case law holds that, once a finding of disability is made, the ALJ must determine its onset date, it does not follow that, given a finding of no disability during the alleged period, the ALJ is required to consider whether an applicant might have been under a disability at some earlier date. *See, e.g., Foster*, 279 F.3d at 353; *McClanahan*, 474 F.3d at 833.

Nevertheless, substantial evidence supports that Plaintiff was not under a disability for a

12-month period starting prior to the alleged onset date. Although Plaintiff initially alleged an onset date of February 2010, when she stopped working, she testified at the hearing that she left her job for reasons unrelated to her alleged disability. [Tr. 33, 165]. Moreover, Plaintiff testified that she found out she was pregnant the day after she left her job; her pregnancy alleviated her prior back pain; and the pain did not return until after the birth of her child in September 2010. [Tr. 33-35]. Following Plaintiff's testimony, counsel amended the onset date to January 1, 2011, when Plaintiff began seeking surgical consultation. [Tr. 33]. Based on these facts, Plaintiff could argue, at most, a period of disability from September 30, 2010, until her treatment in May 2011. Thus, she could not meet the 12-month requirement of § 423(d)(1)(A).

### 3. Function-by-function assessment

Plaintiff argues that the ALJ failed to include a function-by-function assessment in the RFC analysis, as required by SSR 96-8p, and failed to include in the RFC finding substantial limitations correlating to symptoms and limitations that are well documented in the record. Plaintiff also asserts that the ALJ's finding that she requires a "thirty-minute stand/stretch option" is vague because it does not clarify whether she would need to stand and stretch away from her workstation, or whether this option would render her "off-task." She argues that the VE never testified to this specific limitation, which could render her unable to perform any jobs, and asks that the case be remanded for further testimony.

In response, the Commissioner argues that SSR 96-8p merely requires that the ALJ consider each function separately; it does not require that the ALJ discuss each function separately in a written decision. The Commissioner also argues that a stand/stretch break every

30 minutes is clear and unambiguous, and the record contradicts Plaintiff's assertion that the VE did not discuss the limitation during the hearing.

RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. An RFC assessment considers "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id*. The RFC assessment first must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id*. Subsequently, the RFC may be expressed in terms of exertional levels of work – i.e., sedentary or light. *Id*.

In assessing physical abilities to determine a claimant's RFC, the Code of Federal Regulations provides:

> [W]e first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b). Although SSR 96–8p requires a function-by-function evaluation to determine a claimant's RFC, this Circuit's case law clarifies that the rule requires the ALJ to consider each function separately, but it does not require the ALJ to discuss each function separately in a written decision. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).

In his decision, the ALJ determined that, in light of Plaintiff's impairments, she had the RFC to perform sedentary work, pursuant to 20 C.F.R. § 404.1567(a), except that she was limited to posturals occasionally. [Tr. 16]. The ALJ found that Plaintiff should avoid ladders, ropes, scaffolds, heights, and dangerous machinery; she requires a 30-minute stand/stretch option; she could understand, remember, and carry out simple and detailed instructions; she could make work-related judgments typically required for semi-skilled work; she could respond appropriately to supervision, coworkers, and work situations; she could have contact with the general public, with coworkers, and with supervisors on a frequent basis; and she could deal with change in a routine work setting on a frequent basis. [*Id.*]. The ALJ stated that, in making his determination, he had considered, *inter alia*, "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in accordance with the relevant rules and regulations. [*Id.*]. In support of his findings, the ALJ exhaustively detailed Plaintiff's testimony and medical history, as contained in the record. [Tr. 16-21].

Plaintiff asserts that the ALJ failed to include in the RFC findings substantial limitations relating to symptoms well documented in the record, but she does not state what substantial limitations were unaccounted for, and thus, any argument to that effect is waived. *See Howington, 2009 WL 2579620 at *6; Kennedy*, 87 F. App'x at 466. Moreover, our case law supports that, although a function-by-function assessment is required as part of an RFC assessment, the ALJ is not required to discuss each function in his decision. *See Delgado*, 30 F. App'x at 547. Additionally, the ALJ's decision suggests that he considered Plaintiff's ability to

do work-related activities on a function-by-function basis.

For example, the ALJ notes evaluations of Plaintiff on February 26, 2013, and October 20, 2014, variously documenting that Plaintiff could occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry 10 pounds; sit for up to eight hours, stand for up to six hours, and walk for up to four hours total in an eight-hour work day; push and pull with both hands; and occasionally or frequently climb stairs, ladders, ropes, and scaffolds, and kneel and crouch. [Tr. 19-20]. Additionally, in his findings, the ALJ specifically stated that Plaintiff must be able to stand and stretch every 30 minutes, and that she should avoid ladders, ropes, scaffolds, heights, and dangerous machinery. [Tr. 16].

Regarding Plaintiff's assertion that the "30 minute stand/stretch option" is unclear, even if the wording in the ALJ's decision were open to misinterpretation, the ALJ clearly described it as a "30 minute sit/stand option basically to stand and stretch every 30 minutes." [Tr. 43]. Moreover, Plaintiff fails to offer any support for her argument that the ALJ should have stated whether the stand/stretch option would be away from Plaintiff's workstation or would render Plaintiff "off-task." Finally, the record contradicts Plaintiff's assertion that the ALJ failed to discuss the requirement in the hearing. Indeed, the ALJ specifically posited a hypothetical to Vocational Expert Jane Colvin-Roberson ("VE") that included stand/stretch option, and the VE provided examples of sedentary jobs – charge account clerk and payroll clerk – that would fit within the hypothetical. [Tr. 43-44]. Accordingly, Plaintiff's argument fails.

III.    **Conclusion**

Having carefully reviewed the administrative record and the parties' briefs filed in

support of their respective motions, the Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, the Commissioner's Motion for Summary Judgment is **GRANTED**, and the decision of the ALJ is **AFFIRMED**.  Judgment shall be entered in favor of the Defendant.

     **ENTER.**

                                    /s/ *Christopher H. Steger*
                                    UNITED STATES MAGISTRATE JUDGE